Good morning, everyone. I'm excited to see everyone in person and to welcome everybody to the first oral argument of the new sitting term. And I'm excited to be with my two friends and colleagues, Judge Estrepo and Judge Sirica. We have one case on the calendar for us to hear this morning, United States v. Quinnones. Counsel, we'll hear you. Good morning. May it please the Court. My name is Abigail Horn and I represent the appellant, Shannon Quinnones. May I please reserve three minutes for rebuttal? Good. Thank you. Your Honors, spitting on another person is not a crime of violence. This is a straightforward application of the Supreme Court's decision in Johnson 2010. In that case, the Court held that the use of physical force against the person of another is violent force. And the Court further held that mere offensive touching is insufficient. Spitting, Your Honor. But what about the fact that this particular crime is committed when the fluid comes from someone with a communicable disease? Isn't that the kind of thing that certainly can cause physical injury? Your Honor, I'm glad you asked about that element so that we can set it aside from the outset. We were certainly prepared to address this, and we did in our opening brief. In its response, the government has disclaimed any reliance on the infection element, and for good reason. That's because that element carries in Pennsylvania a mens rea of negligence. And, of course, we know from Leocal, in which the Supreme Court held 9 to 0, that crimes that can be committed negligently or accidentally are not crimes of violence. What if we were to decide it was more recklessness than negligence? Your answer would be the same? It would, Your Honor, under Borden. Under Borden. So the infection element is out, which leaves the government with its argument, which is that spitting itself is a crime of violence. And, of course, it's not. Spitting is the paradigmatic example of offensive touching, and it has been for 300 years since the common law. If we look at Lefebvre 16.2, the treatise tells us where one person spits into another's face, that's offensive touching and would be common law battery. There are many other forms of proof for this proposition, this 300-year-old proposition. And, indeed, the government in Johnson 2010 itself conceded that spitting is an example of offensive touching in a brief by then Solicitor General Justice Kagan. So your position is that because we're not applying common law battery, but we're applying Johnson's definition of violent force, that's why spitting would not be the kind of force that would trigger the enhancement? Yes, Your Honor. Spitting squarely falls into the box of offensive touching, and so long as we're in that box, it cannot be a crime of violence. Johnson 2010 tells us that, and nothing since then has changed it. What do you make of the government's argument that it could provoke somebody into violence? Yes, Your Honor. I'm not sure why the government is advancing the provocation argument here. We've known for over a decade that a powder keg is not the test. The government tried this in Johnson itself. It argued that burglary, extortion, and, yes, even spitting could provoke a confrontation. The majority in Johnson did not bite on that argument. It rejected it. And, in fact, only the dissent would have adopted the provocation argument. Justices Alito and Thomas, when discussing what was left out by Johnson 2010, said when one bar patron spits into another space, it could provoke a confrontation. This is left out by the majority's holding in Johnson 2010. But the provocation or the response that you might provoke from another person would be relevant if we were applying the common law definition, correct? Yes. The use of force under common law battery would include offensive touching, such as spitting in another person's face, in another bar patron's face, which could be a provocation. But that is not the test the Supreme Court has adopted. What are we to make of Stoeckling? Is this a game changer in this analysis? Absolutely not, Your Honor. I think the most important point about Stoeckling is that it doesn't touch any of the three premises of the defense argument, that physical force requires violent force, that offensive touching is out, and that spitting is an example of offensive touching. None of those three premises are changed whatsoever by Stoeckling. What did they mean by saying we're following Johnson here when they didn't appear to be following Johnson? I mean, I realize the battery and the robbery were special circumstances and there were maybe reasons to look at the common law here, but is Stoeckling just a robbery and battery case, or is it something else? There are some aspects of Stoeckling that are perhaps perplexing, but the most important thing is Stoeckling is crystal clear. It's not touching the offensive touching box. That box remains pristine so long as we're dealing with a type of force that categorizes as offensive touching. It's out under Stoeckling. When Stoeckling discusses its holding that common law robbery, as criminalized in Florida, counts as a crime of violence, it's careful to say this is different in kind from offensive touching. It suggests a different degree of power than offensive touching, and so Stoeckling doesn't touch the offensive touching box that was established in Johnson 2010. Whatever the hard questions that may be raised by Stoeckling in other cases, those are not raised in this case, in the spitting case. We can think of it as if there are three categories. There's offensive touching, which is squarely out. There's violent force, which is squarely in. There's maybe some question mark cases that the court might have to deal with in the future, but that's not this case. Spitting for 300 years is offensive touching, and so this court need not reach the hard questions raised by Stoeckling. You mentioned that there's a component of this statute that we don't need to look at because of the way the government argued it from your point of view, and I believe you were talking about the source of the infectious content of the spit, right? That's what you were saying. We don't need to look at that component? Correct, Your Honor. But the statute has two state-of-mind elements. It has basically the knowing an intentional act to cause someone to come in contact with the fluid, and then a second state-of-mind element that says the defendant knew or should have known that the source was contaminated. So we have two state-of-mind elements, correct? Yes. Now, the way that 4B1.2 is written, it says that the predicate crime must have as an element, i.e., one element, sort of the proper state of mind, a non-negligent, non-reckless state of mind. Does that mean that the statute is within the possibility of being a predicate offense? So long as the aptus reis, the spitting, is a capable abuse of force? That's a good question, Your Honor. That's why the government says they're able to walk into court at all, that they say that if you add an extra element which carries a mens rea of negligence, we can excise that and we can come in and argue the remainder of the statute. We haven't challenged that they can come into court and say spitting itself is a crime of violence. We think that argument goes nowhere, but we've accepted that they can come into court and argue just the spitting element. In Leocal, of course, what happened in that case was the Supreme Court was addressing a DUI statute, someone intentionally gets behind the wheel while under the influence and then either negligently or accidentally causes bodily injury. They hurt somebody. And the Supreme Court says, well, the bodily injury is out. That's negligence, not 9-0. That's not what we mean by the use of physical force against the person of another. In theory, one could say the person also intentionally got behind the wheel. There is, you know, that. So if we line those up, here we have somebody who's intentionally spitting. We don't dispute that. But the infection element is out because it carries a mens rea of negligence. So why aren't you embracing that? Why aren't you taking the position that this statute has within it a negligent state of mind, we win? Your Honor, we would advance that argument gladly. But are you advancing it is my question. You know, Your Honor, we have argued in our briefs that spitting is so obviously offensive touching that that's the end of the story. We haven't taken, I think, a stronger position, which would be that the government can't even open its mouth if there's any negligence element in an offense. That would be a more aggressive position, one that I don't think we need to take in this case. But certainly if the court wanted to go there, we wouldn't object. So from your perspective, you win either route? Yes, Your Honor. Can you repeat that? Either route. Either route. Either route. Gotcha. Thank you. Yes, Your Honor. If I may make one further point about offensive touching. If there were any question that spitting is a form of offensive touching, I think it's worth taking note of the dissent in Johnson 2010 where Justices Alito and Thomas referred to spitting on a bar patron as offensive touching. So we know what the Supreme Court was thinking in that case. And when Justice Thomas offers Arthur Stoeckling, we already know what he's thinking because he's told us in his Johnson dissent. So there's no way that the act of spitting, again, we have to look at it in its least culpable form. But even in its most culpable form, it's your position that it still could not qualify as Chapman-level physical force of violence or Johnson. That's right, Your Honor. Thank you. If there are no further questions. Okay. Thank you. We'll stand rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Robert Salzman on behalf of the government. I come here this morning with mixed feelings. On the one hand, it's an honor, as always, and a privilege to appear before the Court and especially to do so for the first time in about two years. And it's really a delight to see all of you looking well. Mixed feelings because we're here to discuss, once again, what has to be one of the more absurd sentencing doctrines that anybody could possibly develop. And here we have another discussion about whether a prisoner spitting infectious fluid on a correctional officer is a crime of violence. I mean, this is the nuttiness that the categorical approach takes us to. And despite the fact that we all know, and I think Judge Phipps did us all a great service in his dissent a couple weeks ago in the Scott case where he wrote a compendium of what judges around the country have been saying about the categorical approach. So it spares me the need to do that here. But despite that, there are times we still come out with the right answer under what's logical. And this is one of those cases. What this statute requires, we're not allowed to look at the facts, we're not allowed to look at the fact that this person four times was convicted of really knowingly assaulting correctional officers with infected bodily fluid. We're supposed to look at the least serious way that somebody else could commit this offense. And what the defense has advanced, I think correctly, is that one could commit this offense by knowingly and intentionally spitting on someone else, having reason to know, not definitely knowing that it's infected. But a prisoner intentionally, knowingly spits on someone else. In our view, that is a use of physical force against the person of another. How is that capable of causing physical pain or injury, which is the language we have to apply to these facts under Johnson and Chapman, our precedent? What we have to apply here is how Stoeckling explains that. And with the court's indulgence, I'm going to spend a good bit of my time talking about Stoeckling. Stoeckling says that what force means under the elements clause is not necessarily the infliction of injury or pain, but the potential. And that potential includes the possibility of a violent response by the person who you've touched in this inappropriate way. But that's part of the common law definition of force, isn't it? It is. Now, here's what's interesting is that my friend, Ms. Hornet, is trying to say it's all about offensive touching. She's put this label on it. And then she looks at the common law and says, if it falls in that box of what she calls offensive touching, that that's not physical force under the elements clause. The Supreme Court has never said that. The Supreme Court has never said we look at different common law boxes and decide what's in it. They instead have given us a clear definition, because we have to look at hundreds and hundreds of statutes around the country. And so they give us a definition to use. And the important definition from Stoeckling, and I'm quoting this, this is not altering anything, the act must be sufficient to overcome a victim's resistance, however slight that resistance might be. The contact need not cause pain or injury or even be prolonged. Rather, it need only be capable of provoking a response and thus capable of causing physical pain or injury. So when we look at what the Supreme Court has decided in the past, yes, the Johnson case in 2010 is very important. But the Johnson case in 2010 did not declare no offensive touching as physical force. It did what this court and every court always does. It looked at the case in front of it. And the case in front of it involved a very specific Florida battery statute. And the question was, is that battery statute, does it meet the requirement of physical force under federal law? And that battery statute, the Supreme Court, again, applying the categorical approach, looking to the least serious possible thing you could do to violate that statute, they said offensive touching, but they said that includes a tap on the shoulder. That was the least serious conduct that Johnson was dealing with in 2010. And it told us that a tap on the shoulder is not the use of physical force under federal law. But didn't the common law inform Stoeckling wherein Johnson, the Supreme Court, says we're not applying the common law because the language of violent felony, ACCA, is causing us to look at it differently? And so I don't understand how Stoeckling really can be applied here when it was informed by the common law, but Johnson tells us we really aren't looking at the common law definition. Well, I don't know that Johnson exactly says that. But more importantly, Stoeckling looks to the common law to define the force that's required for robbery. And this is important. I'm glad, Your Honor, it takes me down this path. Because what the Supreme Court says, it's looking at what does force mean in the Armed Career Criminal Act. And, of course, we're dealing with the same word here, same context, in the career offender guideline. And it looks at the history of the ACCA provision. The history of ACCA that it finds significant is that the original ACCA included the term robbery as an enumerated offense. And then two years later in 1986, and it also included the force clause, two years later in 1986, Congress removes robbery as an enumerated offense and restates a broad elements clause. And so what the Supreme Court says is it's clear that what Congress was trying to do was expand the range of offenses that would be predicates under ACCA. But in addition, it was keeping the requirement of force. The Supreme Court assumes certainly Congress still meant to include robbery, a paradigmatic crime, and it did it by keeping the elements clause. And so what the Supreme Court says is it makes sense, therefore, to look at what was the definition of force for common law robbery. Because it looks like that's what Congress has in mind for force across the board. That if force was sufficient to show common law robbery, now that it's the elements clause that applies broader, that's what's required now. And then it defines force. And the definition that it gives is exactly what I just read to the court. So your view would be that any conduct that could provoke a response is sufficient to qualify as a crime of violence? Well, with a caveat. We certainly have to apply Johnson 2010. A tap on the shoulder, a touch, a pickpocket is the classic example where the person barely knows what's happening and it's just grabbed out of his or her hand. That's not violent force according to the Supreme Court. What about cutting somebody off in traffic and giving them the finger? That could provoke a violent response. Oh, absolutely. And I think now, of course, the problem with the categorical approach is you would have to have a statute that's specifically enough drawn. But if that were the statute, do not knowingly or intentionally cut someone off in traffic, yes, that is an act of physical force which could instantly cause pain or injury. So now there are a couple other important things about Stoeckling here. What about the negligence issue here? And the fact that this offense, 2703, could be committed by somebody who had reason to know or should have known or believed. Well, there are two mens rea requirements in the statute or the part of the statute that quinone is violated. First, you have to knowingly or intentionally expel, throw, violate semen, fecal matter, and all these other things that are listed. That is an act of physical force against the person of another. I don't see how anybody could seriously dispute that. Then the other element of the crime is knowing or having reason to know that it's infected. If that were all that were there, that would not be a crime of violence because it's proven by negligence or recklessness and we're told that's not good enough. But what's important here is this offense has at least one element that requires the knowing use of physical force, which is throwing or spitting or what have you. But isn't this only a crime because the defendant had reason to know the fluid was contaminated with communicable disease? I mean, that's what makes it criminal. That's what makes it a felony, I should say. That's what makes this particular act in Pennsylvania criminal. But there are many assault statutes that simply involve spitting on another person. Right, but looking at just this statute following up on Judge Restrepo was saying it has within it as a material, important component of proof this state of mind about what the defendant knew or should have known about the substance expelled. And if that can be satisfied by negligence, doesn't Leocal require us to conclude it is not a crime of violence? No, because what the Elements Clause says is it has as an element the use of physical force. Not that every one of its elements involves the use of physical force. The best example is actually from this case, which is bank robbery. That's what Mr. Quinones is convicted of. That's why he's here. Yeah, I know that's the argument you made in your brief, but I don't know if that's a really good analogy, and I'll explain why. You rely on the jurisdictional component, the FDIC insurance status of the bank, not having to be something a defendant needs to know when they commit the crime. Right, I understand your argument. But the difference here is with this particular statute, the government would have or the Commonwealth would have the burden of proving that reasonable or should have known state of mind, even though it's a lesser element. So I'm not sure that they map your jurisdictional example in this. Do you see why I don't like it? I do, but I respectfully disagree. I think there are many statutes which require both violent elements and nonviolent elements. And what the categorical approach looks to is, is there one element of the use of physical force against the person of another? Otherwise, I think you've wiped out the elements clause. I think there would probably be very few statutes that would qualify at all. Now, we're already well on the road to wiping out assault statutes, as I'm going to be talking about in a minute. But no, I don't think that's a fair thing. I think there are many statutes that, like bank robbery and like many others, where there is a nonviolent element to it. And I don't believe there's any case. What do we make of the Fourth Circuit opinion in U.S. v. Jones? You mentioned that in your briefs. Sure. We respectfully disagree with Jones. And I think that gets to the important point I want to talk about with Stoeckling. The way Jones distinguishes Stoeckling is to say, well, that's robbery. And that's why, I guess, my friend this morning said she finds parts of Stoeckling perplexing, which is translation for, you know, it doesn't work out too well. I do, too. There's a problem here with saying, oh, that's just robbery. And a couple points I'd like to make about it and why we disagree with Jones, Your Honor. First of all, Stoeckling doesn't limit its definition of force to robbery and to the contrary. As I've explained, it says this is the understanding of force that we take from the legislative history of ACCA. And if you do say, oh, that's robbery, and we're going to have a different rule for assault by a prisoner or this type of assault or some other crime, you've actually taken the problem of the categorical approach to an even crazier place, which is hard to do. I mean, we're in a place right now where you have to go through every statute in the country and scrutinize them and have really, really smart defense lawyers thinking of hypothetical ways to violate the crime without using violence. But if you now say, oh, but wait, Stoeckling only tells us about robbery force. We're going to need a different definition of force for different crimes. Well, isn't that what happened with Johnson? I mean, Johnson gave us a definition of force for violent felony per ACCA. Councilman gave us a definition for crime of violence using the common law in Chapman. Our court decided for sentencing guideline purposes and the career offender provision that we're going to use Johnson. So, I mean, the case law, unfortunately, has already done that to all of us, right? It's done a lot of that, but this takes it to another level because now one definition of force is not good enough, according to the Jones case and according to my colleague, that that's only a good enough definition of force for Stoeckling and robbery. We need new definitions of force for other types of offenses. I don't think that's a tenable position. But even if it were a tenable position, and this is the important point, if our job today is to say, okay, what does force mean in the context of assault by a prisoner? And there are other assault by prisoner statutes out there. If our task now is to define what force means, it probably should be identical to what Stoeckling decided. Now, what the defense likes to argue here in this case, and I don't agree with them, but what they argue is spitting is no big deal, as if that happens all the time, that people walk up to each other and spit on each other. Whether that's right or wrong, this is assault by a prisoner. This statute requires that the person be a prisoner. And the person that he or she is assaulting is somebody else in the facility. It's either another inmate or it's an employee, most usually a guard. If we were writing the definition of force for that situation, I think we'd come up with exactly the same definition. Because if a prisoner expels bodily fluid, urine or fecal matter or what have you, on someone else in a prison, there's a pretty good chance that pain or injury is going to result to somebody, that there's going to be a violent reaction. Even, and I don't fault guards, I know they do the best they can, but somebody's got to put that prisoner down, if that's what is happening here. So if we want to focus only on this context, it doesn't work to say, oh, this is nothing, this is spitting, this is, according to the defense, this is paradigmatic offensive touching, which I think is a silly argument, but even if it's true, that's not the context of this statute. So let me make sure I understand you. Your definition of force is that it is something that is capable of causing physical pain or injury, and that could provoke a response. That is correct. Because you've just quoted the United States Supreme Court, and that's what we're applying here. To get around that, what the defense has done here, it's a cherry pick from a dissenting opinion here, and a government brief there, in a constantly changing area of the law. Just so I understand, your view of that could provoke a response is the point at which the pain or injury could occur, not the instrument, not the spitting itself might not cause the pain or injury, it's the response from the spitting that could cause the pain or injury, applying Stoeckling. That's the test you think we should be applying. Exactly, and that's what Stoeckling tells us, because the examples that Stoeckling uses for robbery, which we think have to translate to other crimes as well, include shoving, pinching, grabbing. The example they give is pulling a woman's hairpin where a little bit of hair comes out. I don't think that's pain or injury. It's certainly really low on the scale. But it's the response. It's the fact that the common law in its definition of force, which the Supreme Court has now carried over through robbery into the Armed Career Criminal Act. Why does the prisoner tap the guard on his shoulder and the guard, as in, like, you're not supposed to touch me, turns around and whacks him? That tap on the shoulder would be a crime of violence under your definition simply because the guard responds with a whack? No, because Johnson 2010 controls, and in the ordinary world, a tap on the shoulder, even of a prison guard, is not likely... Why isn't spitting of a like nature of contact? That's for the court to resolve, and I would say that what this statute says is to make someone come into contact with blood, seminal fluid, saliva, urine, or feces. That will provoke a response. I think it's absurd to suggest anything different from that. This is not a tap on the shoulder. This is not brushing past somebody. This is not grabbing a purse out of a person's hands. These are, what it comes down to, the statute, the guideline that we're looking at is, is this the use of physical force against a person or another, and of course it is. The last thing I'll say, if I may indulge for just a moment, what I was mentioning is that a decision here that this type of assault with a prisoner is not a crime of violence really eliminates that statute, and they exist in lots of places, not just as assault by a prisoner, but assault on a law enforcement officer, which is the context that this came up in in Jones and in many other cases leading up to Stokely. And what the Supreme Court has recently been telling us, as wild as the categorical approach is and whatever problems it has caused, the Supreme Court has recently made very clear that ACCA, at least, should not be interpreted in a way that makes it a self-canceling statute. The Congress obviously meant something, and the Sentencing Commission meant something in focusing on people who repeatedly commit crimes of violence. And these doctrines should not be applied in a way that just abrogates the entire statute. Recently the Supreme Court said that in the Quarles case in the context of burglary, involving a burglary definition. And the same here. If you start to say that spitting on somebody, despite the definition in Stokely, is not a crime of violence, you're pretty much eliminating a lot of assault statutes. We've already eliminated assault in Pennsylvania because of other problems, the recklessness aspect of it. But there are many statutes elsewhere that survive, including the federal assault statute, Section 111, which this Court has specifically held is a crime of violence. And yet, I'm not going to concede the issue right now because we would brief it, but there are past cases involving spitting on officers and employees of the United States as being an assault. So I think we need to be very careful before we take what's already a very perverse doctrine to an incredible extreme to the point that there's nothing left. To the point that we just say, well, they were wasting their time in trying to sanction repeat offenders. I appreciate the Court's attention. Thanks very much. Thank you. Thank you, Your Honor. The government today has doubled down on the provocation argument, which is simply not the test in either Johnson or Stokely, for good reason, as Judge Schwartz pointed out, a tap on the shoulder, snatching money out of the hand of somebody, giving somebody the middle finger, verbal insults, verbal taunts, all of these things can provoke a response. These are not crimes of violence under any law. The government says that many statutes would be out. I think they said a lot. They named one, 111A, the federal simple assault statute. We're not here to argue that. If it is out, that's because of Johnson 2010, not because of Ms. Quinones's case. The court knows the holding of Johnson. I don't have to tell you that offensive touching, the force necessary to commit common law battery, is out under Johnson 2010. The government denies that here today. I can't imagine how they could say that. The government also points out the history of the ACCA, which was important in putting common law robbery within its terms in Stokely. There's no argument that Congress intended to punish recidivist spitters at the statutory maximum. In Ms. Quinones's case, we're talking about more than five and a half years added to the bottom of the guideline range. The history points in exactly the opposite direction. The Supreme Court tells us that the context matters. In Leocal, when they were dealing with this DUI statute, the Supreme Court said, we can't forget that we're dealing with the category crime of violence. Congress didn't mean DUI, where somebody gets hurt. And the same thing is absolutely true here. Congress, in defining the category crime of violence, people who deserve the most serious penalties, did not mean recidivist spitting offenses. Do you recall whether in your briefing, your adversary's briefing, whether anybody identified any case where spitting was found to be the kind of force that was capable of causing physical pain or injury? Absolutely not, Your Honor. We cite 11 cases where spitting, and a few of them involve throwing urine, is offensive touching, where it is not capable of causing physical pain or injury. And of course, this is common sense. And were those cases post-Johnson and or post-Stokeling? Two of them were post-Stokeling. Many of them were post-Johnson, and some of them relied on Leocal, because of course, Johnson relies itself on Leocal. When we're talking about a crime of violence, we mean violent active force. And so that's been the law for a long time. Our bodies aren't designed when small bits of liquid touch us. We can go in the rain. We can take a shower. We can wash our hands. These things don't hurt, and the same is true. Think about the Hecker case where somebody spits a mouthful of tap water onto the leg of a correction officer. This doesn't hurt. Feeling a bit of water touch us doesn't hurt. But it could cause injury if it's contaminated in some way, correct? We simply don't have that situation here. The Pennsylvania statute is so odd with this negligence mens rea for the infection element that we don't have that. Many of the cases involving contagious diseases, which we cite various statutes in our brief, have a higher mens rea. But because Pennsylvania includes negligence, that's simply not this case. So that would make the difference if the mens rea were a higher standard? It would certainly be a harder case, Judge Circa. I don't know how we would come out if we had, you know, a statute from a different state where one had to know, for example, that they had a contagious disease. But these, again, are not modes of transmission, actually. If there were any concern, spit and urine are not modes of transmission. For HIV, they're not modes of transmission. For hepatitis B, spitting a mouthful of tap water on somebody's leg cannot possibly give them HIV, even if there were a higher mens rea, which, of course, there's not. Thank you. Thank you very much. Thank you, counsel. It was wonderful to see both of you and for your great arguments. The court will take the matter under advice.